Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICHOLAS HOUSTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1402-CR-102 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1308-FA-53925

**September 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Nicholas Houston appeals his convictions for class A felony criminal deviate conduct, class B felony criminal deviate conduct, three counts of class C felony criminal confinement, and class A misdemeanor battery by body waste. Houston challenges the sufficiency of the evidence to support his convictions. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

The facts most favorable to the verdicts indicate that in 2013, Houston was employed as a corrections officer for a short-term offender program in Plainfield. As a corrections officer, Houston carried a badge. In early July 2013, sixteen-year-old J.H. was working as a prostitute on the corner of 23rd Street and College Avenue in Indianapolis. Houston pulled up in a Chrysler PT Cruiser and J.H. got in the car. J.H. introduced herself as "Dream" and told Houston that she charged $150 for a "blow job." Tr. at 20-21. She told him to drive to a nearby alley. Houston showed her a $100 bill, and she told him that she could accept only smaller bills. He then showed J.H. some $20 bills and a badge. Houston asked J.H. if she had ever been "solicited by a cop." *Id.* at 21. J.H. replied, "No," and Houston said, "Well, I just did." *Id.* J.H. was scared and told Houston that she wanted to get out of the car. Houston ignored her requests and kept driving. J.H. subsequently managed to escape by jumping out the car while it was still moving, injuring her hand, leg, and ankle.

Sometime after Independence Day that same month, J. H. was working as a prostitute on the corner of 22nd Street and College Avenue when Houston pulled up in a Kia Optima. At first, J.H. did not recognize Houston from the prior encounter. She got in the car,

2

introduced herself as Dream, and informed him that she charged $100 for oral sex. Houston agreed to that price and J.H. directed him to drive to the alley. Houston drove past the alley and asked J.H, "You don't remember me, do you?" *Id.* at 26. J.H. responded, "No." *Id.* Houston referred to himself as the "Night Lion" and told J.H, "I always stalk my prey. I told you I would see you again." *Id.* J.H. realized that Houston was the same man who had been driving the PT Cruiser, but this time dressed differently and wearing a cap. Houston showed J.H. his badge and she tried to jump out of his car. Houston grabbed J.H.'s ponytail, yanked her back into the car, and told her that she "wasn't going to get away from him [this] time." *Id.* at 27. Houston warned J.H. that if she tried to run, he would shoot her in the back. Because Houston had told J.H. that he was a police officer, she believed that he had a gun.

As he continued to drive, Houston asked J.H. for her real name and age. When J.H. informed him that she was sixteen years old, Houston replied, "I wish you were younger." *Id.* at 28. J.H. repeatedly asked Houston to take her home, but Houston refused. At one point they drove past a police station that Houston called "his office." *Id.* at 29. He eventually drove J.H. to his apartment located near 47th Street and Georgetown Road. Houston took J.H. inside his apartment and again threatened to shoot her if she tried to leave. When she asked him to take her home, he told her that she was going to jail. Houston then told J.H. that she "was lucky that he didn't feel like doing paperwork that night so in order for [her] not to go to jail" she had to perform oral sex. *Id.* at 32.

Houston pulled J.H. onto the couch close to him. He unzipped his pants, exposed his penis, and pushed her head down toward his penis. J.H. performed oral sex on Houston for

"about forty-five minutes." *Id*. at 33. He slapped J.H. in the face and showed her his badge during this time. J.H. told Houston that he could not ejaculate in her mouth. He ejaculated on her chest and her chin. J.H. felt upset, frustrated, and angry. Houston just laughed. Houston drove J.H. back to the area on College Avenue where he had originally picked her up. After the incident, J.H. did not call the police "because [she] thought [Houston] was the police." *Id*. at 42.

On July 31, 2013, M.H. was walking to a party when a four-door car with dark windows, which she thought belonged to her friend Keith, drove by her. The driver then turned the car around and pulled up next to M.H. She got into the car. However, after the car began moving, M.H. realized that the driver, Houston, was not her friend. She repeatedly asked Houston to let her out, but he kept driving. When they drove by a police station, Houston flashed his badge and told M.H. that she was going to jail for prostitution. M.H. wanted to get out of the car, but she was afraid that Houston would shoot her or arrest her for resisting law enforcement. Houston told M.H. that "it was [her] lucky day, that his wife was out of town and he didn't feel like doing paperwork." *Id*. at 97.

Houston stopped his car and told M.H. to give him a "blow job." *Id*. at 98. M.H. "didn't want to" but she "didn't want to go to jail, either." *Id*. Houston unzipped his pants and forced M.H.'s head down to his penis. After she performed oral sex on Houston for what seemed like a long time, M.H. began crying because she was unable to breathe and could not continue. She stated, "Take me to jail. I can't do it no more." *Id*. at 100. After Houston zipped up his pants and continued talking, M.H. said, "I don't believe you are a

4

cop." *Id*. at 101. Houston drove a little ways up the street before letting M.H. exit the car. As Houston drove away, M.H. memorized his license plate number and called 911.

Both J.H. and M.H. subsequently identified Houston from a photo array. On August 20, 2013, the State charged Houston with: count I, class A felony criminal deviate conduct; count II, class C felony criminal confinement; count III, class C felony sexual battery; count IV, class D felony intimidation; count V, class D felony impersonation of a public servant; count VI, class A misdemeanor battery; count VII, class A misdemeanor battery by body waste; count VIII, class A misdemeanor intimidation; count IX, class C felony criminal confinement; count X, class B felony criminal deviate conduct; count XI, class C felony criminal confinement; count XII, class D felony sexual battery; count XIII, class D felony impersonation of a public servant; and count XIV, class A misdemeanor intimidation. The State subsequently dismissed the sexual battery charges, counts III and XII.

A jury trial was held on December 2 and 3, 2013. The jury found Houston guilty as charged. Thereafter, the trial court entered judgment of conviction on six of the counts and sentenced Houston to an aggregate sentence of fifty years, with five years suspended to probation. This appeal followed.

**Discussion and Decision**

Houston challenges the sufficiency of the evidence to support his convictions. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will

affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* We will address the evidence supporting Houston's convictions in turn.

**Section 1 – Criminal Deviate Conduct**

Houston was convicted of one count of class B felony criminal deviate conduct and one count of class A felony criminal deviate conduct. First, to prove that Houston committed class A felony criminal deviate conduct, the State was required to prove that he knowingly or intentionally caused J.H. to perform deviate sexual conduct when she was compelled by force or imminent threat of force, and he committed the offense by using or threatening the use of deadly force. *See* Ind. Code § 35-42-4-2(a)(1) and -(b)(1). The definition of "deviate sexual conduct" includes an act involving the sex organ of one person and the mouth or anus of another person. Ind. Code § 35-31.5-2-94(1). "Deadly force" is "force that creates a substantial risk of serious bodily injury." Ind. Code § 35-31.5-2-85. Although a threat of deadly force requires more than an "idle threat," *Calbert v. State*, 275 Ind. 595, 598, 418 N.E.2d 1158, 1160 (1981), a weapon need not be displayed to establish the threat of deadly force. *Zollatz v. State*, 274 Ind. 550, 554, 412 N.E.2d 1200, 1202 (1980).

J.H. testified that Houston took her to his apartment and made her perform oral sex on him. J.H. stated that Houston threatened to shoot her in the back if she tried to escape. J.H. stated that she was scared and cooperated with Houston out of fear. J.H. believed that Houston was a police officer and that he was armed. This evidence was sufficient to

6

establish that Houston knowingly caused J.H. to perform deviate sexual conduct by threatening the use of deadly force.

To prove that Houston committed class B felony criminal deviate conduct, the State was required to prove that he knowingly or intentionally caused M.H. to perform deviate sexual conduct by compelling her with force or imminent threat of force. Ind. Code § 35-42-4-2(a)(1). M.H. testified that Houston "flashed" his badge at her and told her that she was going to jail for prostitution unless she gave him a "blow job." Tr. at 94, 98. M.H. believed that Houston would shoot her or arrest her for resisting law enforcement if she did not comply. She stated that Houston pushed her head down to his penis. While she was performing oral sex, M.H. "didn't think [she] was going to live through it because" she did not know whether Houston had a weapon. *Id*. at 99. This testimony was sufficient to support Houston's conviction for class B felony criminal deviate conduct.

## Section 2 – Criminal Confinement

Houston was also convicted of three counts of class C felony criminal confinement. Indiana Code Section 35-42-3-3(a) provides in relevant part that a person who knowingly or intentionally confines another person without the other person's consent commits class D felony criminal confinement. The offense becomes a class C felony if it is committed by using a vehicle. Ind. Code § 35-42-3-3(b)(1)(B). "Confine" means to substantially interfere with the liberty of a person. Ind. Code § 35-42-3-1.

Here, the record indicates that during J.H.'s first encounter with Houston, he was driving a PT Cruiser. Although J.H. willingly got into Houston's car, she testified that she

subsequently requested that he stop the car and let her out. Houston refused, told J.H. he was a police officer, and continued to drive. J.H. eventually jumped out of the car while it was still moving, which caused her injuries. From this evidence, the jury could reasonably infer that J.H. did not consent to being confined in Houston's car. The State presented sufficient evidence to prove that Houston knowingly confined J.H. in his vehicle without her consent.

During her second encounter with Houston, J.H. testified that he was driving a Kia Optima. She willingly got into the vehicle because she did not recognize him from the prior encounter. After recognizing Houston, J.H. repeatedly asked that he stop the car and let her out. Houston refused. When J.H. tried to escape the vehicle, Houston grabbed her by her pony tail and yanked her back inside. Houston threatened to shoot J.H. in the back if she tried to run. This evidence is sufficient to prove that, for a second time, Houston knowingly confined J.H. in his vehicle without her consent.

Likewise, the evidence most favorable to the verdict indicates that Houston knowingly confined M.H. in his vehicle without her consent. M.H. testified that once she realized that Houston was not her friend Keith, she asked Houston to stop his vehicle and let her out. Houston refused to stop. Instead, he continued to drive, maintaining that he was a police officer and that he was going to take M.H. to jail. This evidence is sufficient to support Houston's third conviction for class C felony criminal confinement.

### Section 3 – Battery by Body Waste

Finally, to convict Houston of class A misdemeanor battery by body waste, the State was required to prove that he knowingly or intentionally in a rude, an insolent, or an angry

8

manner placed semen on J.H. *See* Ind. Code § 35-42-2-6(f). J.H. testified that she did not want to perform oral sex on Houston and that she did not want him to ejaculate on her. J.H. stated that she felt upset, angry, and frustrated when Houston ejaculated on her chest and her chin. She testified that Houston was laughing. This testimony was sufficient for the jury to conclude that Houston knowingly or intentionally placed semen on J.H. in a rude or insolent manner.

On appeal, Houston claims that his victims were not credible witnesses and that his encounters with them were consensual. The entirety of his argument is merely a request for this Court to reweigh the evidence and reassess witness credibility in his favor, which we may not do. Houston's challenge to the sufficiency of the evidence to support his convictions fails. Accordingly, we affirm his convictions.

Affirmed.

RILEY, J., and MATHIAS, J., concur.